## NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY COMPANY v. UNION RAILWAY COMPANY.

Western Section. June 22, 1928.

Petition for Certiorari denied by Supreme Court, January 19, 1929.

G. T. Fitzhugh, Millsaps Fitzhugh and C. H. Williams, of Memphis, for appellee.

J. W. Canada and Edward Russell, both of Memphis, for appellant.

OWEN, J. The Union Railway Company of Memphis, Tennessee, has appealed from a decree rendered against it in the chancery court of Shelby county. Learned counsel for complainant has made a fair and full statement of the facts in his brief as follows:

This is a suit by the Nashville, Chattanooga & St. Louis Railway to recover its proportionate share of the damage to a shipment of cottonseed meal consigned by the Gayoso Oil Works of Memphis, Tennessee, to Lanier Brothers, destination, Mt. Jackson, Virginia, resulting from a leaky roof in car furnished by the Union Railway Company.

Union Railway Company furnished said car, numbered D. & R. G. No. 63093, to the Gayoso Oil Works on August 2, 1920, for the purpose of loading it with cottonseed meal. The car was loaded on that day and a switching ticket was attached to said car, directing the Union Railway Company to deliver it on the tracks of the Nashville, Chattanooga & St. Louis Railway, and the latter railway issued its bill of lading to the Gayoso Oil Mill for same. Said bill of lading described the contents of the car as being 50,000 pounds of cottonseed meal and provided that the property described was in apparent good order. And no exceptions were noted upon the face of said bill of lading. The defendant Union Railway Company received said car on August 3rd but did not deliver it to the complainant until August 16th. In the meantime, the contents of the car were badly damaged by water owing to a leaky roof in the car. The Union Railway Company admitted that a switching ticket was attached to said car D. & R. G. 63093 when it was received by the Union Railway Company showing that the car as loaded was to be switched to the Nashville, Chattanooga & St. Louis Railway for shipment, and it has admitted that during the time said car was in its (Union Railway Company's) possession the switching ticket was lost and that the car itself became in bad order and was delayed until the morning of August 16th.

As soon as the car was delivered to the Nashville, Chattanooga & St. Louis Railway, the shipment was loaded in a sound car and transported in the usual way to its destination. The consignee refused to receive it on account of the damaged condition, and the shipment was sold at Strasburg, Virginia, by the Southern Railway, the last carrier, at the best price obtainable, and a loss was sustained amounting to $712.58. The Nashville, Chattanooga & St. Louis Railway paid Lanier Brothers the whole value of the shipment amounting to $1631.25, and received from the damaged meal the sum of $918.67, making the total loss $712.58. After the usual investigation by the Nashville, Chattanooga & St. Louis Railway and the Southern Railway it was decided that the loss was sustained by reason of two causes; first, on account of the unsuitable equipment furnished by the Union Railway Company; and second, the delay in the delivery. The car having been furnished by the Union Railway Company they were of the opinion that one-half of the damage sustained should be charged to the Union Railway on account of defective equipment; that there was a delay of eighteen days in making the delivery, of which time thirteen days, or seventy-two per cent, should be charged to the Union Railway; two days, or eleven per cent to the Nashville, Chattanooga & St. Louis Railway; and three days, or seventeen per cent to the Southern Rail-

way. On the basis, the Union Railway Company should be charged on account of defective equipment the sum of $356.29, and on account of thirteen days' delay, $256.53, making a total of $612.82.

The Chancellor was of the opinion that the damage to this shipment was due to the negligence of the Union Railway in furnishing defective car and other equipment and to defendant's delay in delivering said shipment. The Chancellor further held that the apportionment of the damage was fair and reasonable and that the best price obtainable was realized from the sale of said shipment, and that therefore, complainant, Nashville, Chattanooga & St. Louis Railway, was entitled to recover of the defendant, Union Railway Company, the full amount sued for, to-wit: $612.82.

The defendant prayed and perfected an appeal, has assigned three errors; by said errors the defendant insists: first, there is no evidence to support judgment of the court; second, the court erred in admitting the testimony of Millard Taylor, chief clerk to the freight agent of complainant. The third assignment is as follows:

There is no evidence of:

(1) A contract between the Nashville, Chattanooga & St. Louis Railway and the Union Railway Company, or any contract.

(2) Of the condition of the cottonseed meal when loaded.

(3) Of its condition while in the possession of the Union Railway Company.

(4) Of its condition when the car was delivered to the Nashville, Chattanooga & St. Louis Railway.

(5) Of its condition when the Southern Railway Company accepted it.

(6) Of its condition upon arrival.

(7) That it was refused by the consignee.

(8) Of its value when delivered to the Union Railway Company.

(9) Of its value when it arrived.

(10) That it rained during the time it was in the possession of the Union Railway Company, or any of the other railroads.

(11) That it was damaged by any of the railroad companies while in their possession.

(12) That even if it rained while the car was in the possession of the Union Railway Company, that the car was in this rain or in any manner subjected to the rain.

We find as a fact that the defendant furnished the Gayoso Oil Works a box car on August 2, 1920, which box car or freight car was loaded with cottonseed meal and consigned to Lanier Brothers, Mt. Jackson, Virginia, on the day the car was loaded it was to be delivered to the complainant, the complainant issued its bill of lading to the Gayoso Oil Works on August 2, 1920, through the

negligence of the defendant the car of cottonseed meal was not delivered to complainant until August 16th, an unaccountable delay of thirteen days, the only excuse offered by the defendant is that the shipping instructions attached to the car of cottonseed meal at the time it was loaded became lost or misplaced and the car of meal was switched in among some dilapidated, empty box cars.

When the complainant received the car of meal it was so badly damaged and the roof to the car being so rotten the meal was reloaded and sent on to consignees. The car of meal was worth $1631.25. Lanier Brothers refused the shipment; thereupon, complainant notified the Southern Railway, the delivering carrier, to sell said carload of meal to the best advantage. This was done and the sum of $712.58 was realized. There was a lost sustained of $918.67.

The complainant and the Southern Railway Company agreed to share part of this loss by reason of the delay in delivery and complainant credited its claim against the defendant for $100, this credit was also allowed by the claim agents of the two railroads, complainant and Southern, and was not agreed to by the defendant, as it was merely a switch line and did not belong to the Freight Agent's Association the defendant declined to be bound by this assessment of the damage. The evidence warrants the conclusion that the damage to this shipment resulted entirely from the leaky roof on the car furnished by the defendant. The defendant was not injured by complainant's reduction of the damages by complainant's freight agent. The defendant also contends that the complainant, who issued the bill of lading, was negligent in not locating the car before the defendant delivered it on August 16th. This will not excuse the defendant, it was the defendant's duty to load the consignment in a properly equipped car and to deliver the same to complainant without delay. We find evidence to sustain the Chancellor's decree. As to the competency of the testimony of Millard Taylor, witness for complainant, it is insisted that this testimony was hearsay, we do not so find; the witness' testimony was based upon his personal investigation of the claim for damages.

"Civil causes are determined in accordance with the preponderance of the proofs. The party upon whom the burden of proof rests must introduce sufficient evidence to satisfy the mind of an impartial judge that the fact he alleges is probably true. Courts proceed upon the preponderance of probabilities; and a mere preponderance of evidence, however slight, must necessarily turn the scale." Gibson's Suits in Chancery (2 Ed.), sec. 445; Hamilton v. Zimmerman, 5 Sneed, 44; Hills v. Goodyear, 4 Lea, 233. In Chap-

man v. McAdams, 1 Lea, 505, the rule was stated by Chief Justice Deaderick, who delivered the opinion of the court;

"And Judge Caruthers in his History of a Lawsuit, sec. 364, says: 'In civil cases juries are to give their verdict according to the weight of the evidence, a bare preponderance on one side or the other carries the verdict,' and cites in support of this proposition Greenleaf on Evidence, sec. 13a."

We find that complainant has sustained its suit by a preponderance of the evidence. There is no error in the decree of the Chancellor; all the assignments are overruled and disallowed. The judgment of the lower court is affirmed. The complainant will recover of the defendant the amount of the judgment rendered in the lower court with interest thereon from the date of its rendition. The complainant will also recover of the defendant and its sureties on appeal bond all the costs of the appeal of which execution will issue.

Heiskell and Senter, JJ., concur.